Cecil M. LONG, Jr. and Mary K. Long, Appellants,

v.

REA EXPRESS COMPANY and Paul L. Cameron, Respondents.

No. KCD 27928.

Missouri Court of Appeals, Kansas City District.

Oct. 2, 1978.

Rehearing Denied Oct. 30, 1978.

Don B. Roberson, Stephen B. Millin, Jr., Shughart, Thomson & Kilroy, Kansas City, of counsel, for appellants.

A. Warren Francis, Lloyd A. Hamrick and Jeffrey T. O'Connor, Kansas City, for respondent REA Express Co.

Joseph E. Stevens, Jr., Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, for respondent Paul Cameron.

Before PRITCHARD, P. J., SWOFFORD, C. J., and DIXON, J.

SWOFFORD, Chief Judge.

This case arises from a collision involving an automobile driven by Cecil M. Long, appellant, and a van truck owned by REA Express Company (REA) and driven by Paul L. Cameron (Cameron), respondents. Cecil Long and Cameron were the only occupants of the vehicles at the time of the collision. Cecil Long and his wife, Mary, brought suit jointly, in separate counts, against both Cameron and REA, for personal injuries sustained by Cecil, damage to the Long automobile, and damages for loss of services and consortium sustained by Mary by reason of injuries to her husband. Cameron counterclaimed against Cecil Long for personal injuries, and REA counterclaimed against him for damages to the truck. The jury returned a verdict in favor of Cameron and REA on plaintiffs' claims, and in favor of Cecil Long on the counterclaims.

After an unsuccessful motion for a new trial, the Longs appealed. The only points urged by plaintiffs are that the court erred in giving Instruction No. 5, offered by defendants, which reads:

"Your verdict *must be for defendants* on plaintiffs' claims for damages unless you believe that *defendants were negligent* as submitted in Instruction Nos. 3 and 4 *and that plaintiffs sustained damages* as a direct result thereof.
Submitted by Defendants
M.A.I. 33.03(5)" (Emphasis supplied)

Instructions No. 3 and No. 4 are separate verdict directing instructions offered and given for the plaintiffs. Both are predicated upon a finding of negligence on the part of defendant Cameron based upon the hypothesis that he "knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have slackened his speed but that said defendant failed to do so" and was "thereby negligent". Plaintiff Cecil Long seeks a verdict for the damages sustained by him (No. 3) and Mary Long for her damages sustained by reason of injuries to her husband (No. 4). Both instructions conclude with the proviso "unless you believe Plaintiff [Cecil M. Long, (No. 3) or Mary Long (No. 4)] is not entitled to recover by reason of Instruction No. 6", the contributory negligence instruction.

The thrust of plaintiffs' attack upon Instruction No. 5 is two-fold. *First,* they state (here in summary) that this instruction is erroneous because it requires the jury to find that *both* Cecil Long and his wife Mary were *damaged,* whereas, the husband's right to recover damages for his own injuries is not conditioned upon the predicate that his wife sustained damages for loss of services or consortium by reason of

his injuries, and, *second,* that the instruction was erroneous because it required a finding that *both defendants,* Cameron and REA, *were negligent,* and that as a matter of law the plaintiffs' right to recover was not dependent upon a finding that defendant REA was negligent.

This second attack can be here disposed of upon the basis of the record before this Court. There was no dispute that at the time of this occurrence the defendant Cameron was an employee of REA, driving its equipment and acting within the course and scope of his employment. This relationship is specifically and affirmatively admitted in REA's counterclaim for damage to its van. Thus, REA, was vicariously and directly liable for the negligence of Cameron under the doctrine of *respondeat superior.*

The first attack upon Instruction No. 5 must be passed for the moment because the respondents specifically preserved below and raised upon this appeal two points which, if favorably ruled, would be decisive of this appeal. The respondents state that appellants did not make a submissible case based upon the hypothesis of Instruction No. 5, of negligent failure to slacken speed, and that the evidence conclusively established, as a matter of law, that plaintiff Cecil Long was guilty of contributory negligence. Of course, if either of these arguments represents a valid legal position under the evidence, defendants' motions for directed verdicts should have been sustained at the close of all the evidence, and errors in instructions or elsewhere in the record could not have prejudiced plaintiffs and need not be considered further. *Hosford v. Clark,* 359 S.W.2d 424, 426[1] (Mo.App.1962); *Osborn v. McBride,* 400 S.W.2d 185, 188[1] (Mo.1966); *Shepard v. Ford Motor Co.,* 457 S.W.2d 255, 259[2, 3] (Mo.App.1970); *Wilkerson v. State Farm Mutual Ins. Co.,* 510 S.W.2d 50, 52[3] (Mo. App.1974). Under this state of the record, these claims by respondents become a matter of first concern and require a somewhat detailed review of the evidence. In so doing, it must be kept in mind that the burden of persuasion on these claims rests on the respondents and the evidence must be considered in a light most favorable to plaintiffs, plaintiffs' evidence and all reasonable inferences to be drawn from the evidence must be accepted as true, and all evidence contrary thereto or in conflict therewith must be disregarded. *Burrow v. Moyer,* 519 S.W.2d 568, 570[1] (Mo.App.1975); *Holtmeyer v. Scherer,* 546 S.W.2d 29, 32[1] (Mo. App.1976). The matter of negligence, causation and contributory negligence are usually questions for the jury and not for the trial court, if reasonable men could honestly differ as to those points. *Ogden v. Toth,* 542 S.W.2d 17, 19[2] (Mo.App.1976); *Holtmeyer v. Scherer,* supra, l.c. 32[4]. When so viewed, the evidence discloses the following facts:

A collision involving motor vehicles driven by Cecil Long and Paul Cameron occurred on January 28, 1970[1], at 12:30 p. m., within the 4100 block of Front Street in Kansas City, Missouri, not at an intersection. At the scene of the accident Front Street is a roadway with two lanes, each approximately 12 feet in width, accommodating east and westbound traffic. The weather was clear, the pavement dry, and visibility in both directions was unobstructed. Long was proceeding west in a white 1960 Pontiac station wagon. Cameron was proceeding east in a Ford van-type truck owned by his employer, REA Express Company. Long's automobile was in good mechanical condition.

At the time of collision, Long was westbound, followed by a tractor-trailer truck driven by Admiral Harris. After the collision, Cameron's truck lay on its right side blocking the north or westbound lane, and Long's automobile rested at a point 10 to 12 feet north of the roadway. The events which transpired immediately prior to the collision, particularly estimates of speed, distance and location of the point of impact, and the presence and location of another truck driven by John Cowger, were subject to contradictory testimony between the wit-

1. This appeal is from the judgment in the second trial of this case.

nesses at trial, and between the witnesses' testimony at the first trial and on prior occasions.

*Long* testified that as he proceeded in the north lane at 30 to 35 miles per hour, he overtook and passed Harris' tractor-trailer truck, which was proceeding at 20 to 25 miles per hour; that it was the only vehicle he passed on Front Street before the collision; and that there were no other vehicles westbound in front of him. Before he pulled onto the south lane to pass, he saw Cameron's truck approaching eastbound in the south lane, over two blocks away. Completing the passing maneuver, he observed Cameron's truck at an approximate distance of one and a half to two blocks away. When their vehicles were 75 to 100 feet apart, Long noticed that Cameron was "fighting the wheel" and having "difficulty controlling his vehicle". Cameron's truck then turned to the left, and Long braked and swerved to the right but was unable to avoid the collision, which occurred in Long's lane, the north or westbound lane.

*Cameron,* called as a witness by the plaintiffs, testified that he was traveling in the south lane at about 40 miles per hour when, at a distance of approximately 200 feet, Long pulled onto the south lane to pass the two tractor-trailers driven by Cowger and Harris. He immediately applied his brakes but the truck began to "fishtail", whereupon, he immediately disengaged the brakes in order to allow the fishtailing motion to subside. He testified that he had secured the van truck from his company's repair shop that morning and that it was heavily loaded. The record does not reveal the nature of this load except that it consisted of large packages and some rolls of rugs of such length that he could not shut the doors on the truck which ordinarily separated the driver's compartment from the load compartment and, as a result, the rugs, because of their length, extended into the driver's area. When he applied his brakes, the truck began "fishtailing". He had to let up on his brakes to stop the "fishtailing". Thereafter, he steered his truck to the right, so that its right wheels were on the south shoulder of the roadway, which was wet and muddy. He then again applied the brakes, the truck jerked sharply to the left or back onto the roadway, and he was thrown from the operator's seat into the step-well immediately to his right in the truck. Cameron testified he did not observe the location of impact in terms of the center of the roadway. He estimated the total time lapse between first sighting Long and impact at two to three minutes. Cameron stated that he could have stopped his vehicle in the distance afforded when he first observed Long by staying on the pavement but this would not have avoided the collision. However, Cameron acknowledged his prior testimony under oath, that had he kept his vehicle on the roadway, he probably could have stopped in time to have avoided the collision, and that such testimony was true when he gave it and true at the time of this trial. Of course, if he had ability to stop before impact (as he stated) he had ability to slacken speed.

*John Cowger* testified for the defendants that Long passed his truck at approximately 40 miles per hour and returned to the north lane behind the truck driven by Admiral Harris. When Long pulled onto the south lane to pass Harris, Cowger observed the approaching Cameron vehicle. As Long went ahead of Harris and started to return to the north lane, Cameron went to the south shoulder, then turned to the left and Cameron and Long collided "in the center of the roadway". On cross-examination, Cowger acknowledged his prior testimony under oath to the effect that Long had returned to his lane and that the position of Harris' truck between Long and his vehicle prevented his observation of the point of impact.

*Admiral Harris* testified that he was proceeding at 30 to 32 miles per hour and first observed Long attempting to pass when Long's automobile was even with the rear wheels of his 55-foot long tractor-trailer. About the same time, he noticed Cameron's vehicle approaching at a distance of a little more than 300 feet. He observed Cameron partially go to the shoulder, then turn toward the center of the roadway. On cross-

examination, Harris acknowledged his previous testimony under oath, that Long had completely returned to the north lane while the Cameron vehicle was still 50 to 60 feet away.

■ Under the facts here presented, a submission of failure to slacken speed requires substantial evidence of an appearance of danger, of sufficient time and distance to enable defendant to slacken speed and thereby avoid collision, and of the necessary mechanical appliances at defendant's command to take effective action. *Cook v. Cox,* 478 S.W.2d 678, 680–681[3–4] (Mo. 1972); *Saupe v. Kertz,* 523 S.W.2d 826, 830[5] (Mo. banc 1975). Under the evidence above noted, this record amply supports the submission of the matter of Cameron's negligence to the jury. This is true under the evidence whether one adopts Long's or Cameron's account of the events preceding the collision.

■ Respondents' contentions as to contributory negligence are directed primarily at the issue of causation. While a motorist should not attempt to pass another vehicle in the face of oncoming traffic except by the use of the highest degree of care, upon appearance of danger it is equally incumbent upon the oncoming motorist "to exercise the highest degree of care to avoid collision by slowing, stopping, swerving or other means reasonably available and consistent with his own safety". *Probst v. Seyer,* 353 S.W.2d 798, 804[8] (Mo.1962). Specifically, respondents submit the absence of substantial evidence of the stopping distance of Cameron's truck is fatal to plaintiffs' submission and renders Long contributorily negligent as a matter of law. Essentially, respondents argue that Long was negligent to pass in the face of Cameron's oncoming vehicle and that insufficient evidence was presented at trial to allow the jury to conclude that Cameron's failure to slacken speed was the proximate cause of the accident. In *Offenbacker v. Sodowsky,* 499 S.W.2d 421, 423[1] (Mo.1973), the Missouri Supreme Court upheld a submission of failure to stop without the presence of evidence of specific stopping distance where the defendant testified he could have stopped his vehicle before impact, but instead went to the shoulder and then applied his brakes. At the first trial of this case, Cameron, when asked to state the distance in which he could have stopped his truck had he remained on the roadway, testified, "Well, I could have stopped in time, probably if I had remained on the roadway". This admission by the defendant, when considered with all the evidence adduced at trial, is sufficient evidence of stopping distance to make a submissible case of failure to slacken speed. As the jury could therefore reasonably conclude that Cameron's failure to slacken speed was the proximate cause of the accident, a judicial declaration that Long was contributorily negligent as a matter of law is improper. See *Hosford v. Clark,* 359 S.W.2d 424, 428 (Mo.App.1962) and cases cited therein.

That brings the decisional process in this case to a consideration of the propriety of defendants' converse Instruction No. 5, above set out in full. This instruction shows upon its face that it is M.A.I. 33.03(5) but does not show that it is a modification of that approved instruction. M.A.I. 33.-03(5) is noted as "(Conversing Damages and Causation)" and reads:

"Your verdict must be for defendant [on plaintiffs' claim for damages] unless you believe that defendant was negligent [as submitted in Instruction (5) Number ——] and that plaintiff sustained damages as a direct result thereof."

■ It is noted that defendants in this case modified and deviated from M.A.I. 33.-03 by altering "plaintiff" and "defendant" to the plural form. Deviation from or modification of approved instructions raises a presumption of prejudicial error for which the party offering such instruction bears the burden of demonstrating the non-prejudicial effect thereof. *Watterson v. Portas,* 466 S.W.2d 129, 132[5, 6] (Mo.App.1971); S.Ct.Rule 70.01(c).

■ Appellants' charge of error in the giving of this instruction is resolved by reference to the purpose which such in-

structions serve. Generally, the converse applies elements of the verdict director and is intended to authorize a verdict for a defendant upon a finding of the converse of any fact or element of the case essential to a verdict for the plaintiff. S.Ct.Rule 70.-01(f); M.A.I. "How to Use this Book", p. LI. It follows that a converse that requires the jury to *find* the converse of *an element or fact not essential* to plaintiff's recovery is confusing, misleading and erroneous.

In the case at bar, the Longs in separate verdict directing instructions submitted a common theory of recovery but the elements of their respective damages were completely different and separate. Respondents' modification of M.A.I. 33.03(5) erroneously required a finding that *both* plaintiffs sustained damages as a condition precedent to recovery by *either*. Cecil Long's, the husband's right of recovery for his injuries and consequent damages is not conditioned upon Mary Long having sustained damages for loss of his services and consortium, as his wife.

Missouri courts have considered this type of converse on two occasions. In *Mayberry v. Clarkson Construction Company*, 482 S.W.2d 721, 726[5] (Mo.1972), an action by husband and wife each for personal injuries and for loss of consortium of each other, the converse submitted stated that the verdict must be for defendant on both claims for consortium and the husband's claim for personal injuries unless the jury believed each proposition contained in the three respective verdict directors. The Court found the converse "confusing, misleading and erroneous", in that (l.c. 726):

> "(T)he instruction places the three claims * * * in one category and tells the jury that either the plaintiffs are to recover on all three, or on none * * "

In *Burrow v. Moyer*, 519 S.W.2d 568, 572[7, 8] (Mo.App.1975), an action by the wife for personal injuries in which the husband joined for medical expenses and loss of consortium, defendant submitted one converse which read in relevant part, " * * * and that plaintiffs sustained damage as a direct result thereof". The Court found prejudicial error because " * * * A single converse is used only in cases where defendant intends to converse the same theory in each of plaintiffs' verdict directors' and not where defendant was seeking to converse both negligence and damages.

Instruction No. 5 requires the jury to find *more* than the essential elements of plaintiff-husband's case in order to find for him. S.Ct.Rule 70.01(f). Respondents were not without alternatives, as separate converses for the common theory of recovery and additional consortium submission are permitted. See *Wyatt v. Southwestern Bell Telephone Company*, 514 S.W.2d 366, 370[4] (Mo.App.1974); M.A.I. 33.03 Notes on Use (Supplemental); Illustrative Instructions M.A.I. 35.06 No. 6 and 35.05 No. 5.

Respondents' modifications of M.A.I. 33.-03(5) by changing "plaintiff" and "defendant" to the plural form constitute prejudicial error and misdirection. S.Ct.Rule 70.-01(c), (f). By misstating the essential elements of plaintiff Cecil Long's case, Instruction No. 5 requires the jury to believe *more* facts and elements than are essential to his recovery and is thereby confusing, misleading, erroneous and constitutes reversible error.

The judgment is reversed and the cause remanded for a new trial upon the plaintiffs' causes of action only since no appeal was taken by defendants from the adverse judgment on their counterclaims.

All concur.